# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

DEBRA DAVIS,                          )
                                      )
            Plaintiff,                )
                                      )
v.                                    )   Case No. CIV-11-206-SPS
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of the Social            )
Security Administration,              )
                                      )
            Defendant.                )

## OPINION AND ORDER

The claimant Debra Davis requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled.  As discussed below, the decision of the Commissioner is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*

*Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on January 20, 1961, and was forty-five years old at the

time of the administrative hearing.  She has a high school education and past relevant

work as a cook and personal assistant (Tr. 22, 27).  The claimant alleges that she has been

unable to work since April 15, 2000, because of mental health problems, an aneurysm

behind her right eye, and headaches (Tr. 103).

### Procedural History

The claimant applied for supplemental security income payments under Title XVI

of the Social Security Act, 42 U.S.C. §§ 1381-85, on November 21, 2006.  The

Commissioner denied her application.  ALJ Osly F. Deramus held an administrative

hearing and determined that the claimant was not disabled in a written opinion dated

August 14, 2009.  The Appeals Council denied review, so this opinion is the

Commissioner's final decision for purposes of appeal. 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that

the claimant had the residual functional capacity ("RFC") to perform light work as

defined in 20 C.F.R. § 416.967(b) with the additional mental limitations that she can

perform simple and some complex tasks, relate to others on a superficial basis, and adapt

to a work situation (Tr. 16).  While the ALJ concluded that the claimant was unable to

return to her past relevant work, he found that there was work the claimant could perform in the national economy, *i. e.*, ticket taker and remnant sorter (Tr. 23). Thus, the ALJ concluded that the claimant was not disabled (Tr. 23).

### Review

The claimant contends that the ALJ erred: (i) by failing to develop the record regarding claimant's physical and mental impairments; (ii) by failing to find that the claimant's obesity, urinary incontinence, and congestive heart failure were severe impairments at step two; (iii) by mischaracterizing the evidence related to claimant's impairments; (iv) by ignoring probative evidence that conflicted with his findings; (v) by failing to properly analyze the claimant's credibility; (vi) by failing to properly analyze the treating physician opinion of Dr. Umar Saeed; (vii) by failing to properly analyze the claimant's mental RFC; and (viii) by failing to pose proper hypothetical questions to the vocational expert. The Court agrees that the ALJ failed to properly analyze the medical evidence of record.

The claimant underwent a craniotomy in April 2000 to repair an aneurysm behind her right eye (Tr. 136). The claimant began receiving treatment from Dr. Umar Saeed, M.D. at the Central Oklahoma Family Medical Center (COFMC) in December 2006 (Tr. 193). At that time, the claimant presented with shortness of breath, chronic fatigue, and swelling in her legs (Tr. 192). Following a chest x-ray, the claimant was diagnosed with new onset congestive heart failure, and Dr. Saeed wrote that he was "suspicious of patient having a possible myocardial infarction in the recent past or is currently having it" (Tr.

193).  However, it was discovered that she had a large saddle embolus.  In addition, the echocardiogram report showed that claimant had left ventricular hypertrophy, a severely dilated right ventricle with freewall hypokinesis, mild mitral valve regurgitation, severe tricuspid regurgitation and severe pulmonary hypertension, and mild pulmonary valve insufficiency (Tr. 493).  The claimant thereafter had surgery to treat the saddle pulmonary embolus.  The claimant was diagnosed with deep vein thrombosis in January 2007 and prescribed Lortab and Coumadin (Tr. 273).  The claimant regularly complained of swelling in her legs (Tr. 182, 192, 270, 272, 301, 302, 397, 400).  The claimant was noted to be experiencing worsening symptoms of chronic venous insufficiency on September 10, 2007 including left calf edema (Tr. 329).  She was referred to McBride Clinic for possible relapsing polychondritis in October 2007, which she was told would cause "further problems with all of the cartilaginous materials in her body" (Tr. 347, 369).  While Dr. Saeed noted that claimant's pulmonary embolism had resolved, he also noted that the claimant "[h]as chronic venous stasis at this point" and advised the claimant to "keep legs elevated above heart level, [and wear] stockings bilaterally as recommended routinely" (Tr. 400).  The claimant presented complaining of a severe headache on September 24, 2008, and her problem list included tobacco use/dependence, DVT and pulmonary embolism, chronic venous insufficiency, GERD, gastroenteritis, arm pain, finger pain, relapsing polychondritis, sleep apnea with sleep disturbance, urinary incontinence, and a history of pulmonary embolism (Tr. 390-91).

The claimant was examined by state physician Dr. Gerald Tran, M.D. on February 10, 2007 (Tr. 245-49).  The claimant related to Dr. Tran that she could sit or stand for only one hour, cannot walk more than one block, and cannot lift greater than ten-twenty pounds (Tr. 245).  However, Dr. Tran found that claimant had normal range of motion in all joints except that she had a minimally reduced range of motion in left shoulder abduction and left forward elevation in her shoulder (Tr. 249).

State examining physician Dr. M. Gerald Ball, Ph. D. administered a Mental Status Evaluation to the claimant on March 1, 2007 (Tr. 254-55).  The claimant was driven to the appointment by her daughter, and Dr. Ball noted that she "walked very slowly and said that it is hard for her to get strength in her legs" (Tr. 254).  The claimant reported having blood clots in her legs and around her heart, for which she takes Coumadin to thin her blood, problems with swelling in her legs and ankles (with the left causing more problems than the right), and problems with breathing due to a mass in her right lung (Tr. 254-55).  The claimant also reported crying often, difficulty sleeping, and chronic fatigue (Tr. 255).  As a result of the evaluation, Dr. Ball found that claimant had problems with her short-term memory, long-term memory, and abstract thinking (Tr. 255).  Dr. Ball also noted that claimant "appears to be functioning in the borderline range of intelligence with an approximate IQ between 80 and 85" (Tr. 255).  The assessment was adjustment disorder with depressed mood, borderline intellectual functioning, problems with ear, eye, arms, neck, circulation problems with blood clots and a mass in

her right lung, and problems with pain and worrying about her health (Tr. 255). Dr. Ball assigned to claimant a GAF score of 45 (Tr. 255).

State reviewing physician Dr. Burnard Pearce, Ph.D. completed a Psychiatric Review Technique (PRT) and found that claimant suffered from affective disorders and mental retardation, *i. e.*, borderline intellectual functioning (Tr. 277-78). Dr. Pearce then found that claimant was mildly limited in activities of daily living and moderately limited in maintaining social functioning and maintaining concentration, persistence, and pace (Tr. 284). Dr. Pearce also completed a Mental Residual Functional Capacity Assessment and found that claimant was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public (Tr. 288-89).

State reviewing physician Dr. Janet D. Rodgers, M.D. completed a Physical Residual Functional Capacity Assessment on May 2, 2007 (Tr. 292-99). Dr. Rodgers found that claimant was capable of occasionally lifting/carrying 20 pounds, frequently lifting/carrying ten pounds, standing/walking for six hours in an eight hour workday, and sitting for six hours in an eight-hour workday (Tr. 293).

The claimant testified that she has pain in her neck that radiates down her left arm and causes a shooting, sharp pain in her back that makes it difficult to sit, stand, and walk (Tr. 32). She testified that she is capable of standing for two hours (one hour continuously), can lift "maybe 10 pounds[,]" and has bad headaches two-three times per day (Tr. 33, 38). She stated that she has problems with painful swelling in her legs four-

five days a week which causes her to lie down and elevate her legs (Tr. 35). The claimant related that her problems with depression and anxiety stem from the fact that the father of her children was imprisoned for child molestation (Tr. 36-37).

The ALJ erred in analyzing the claimant's medical evidence in several particulars. For example, in analyzing the claimant's mental impairments, the ALJ rejected Dr. Ball's assignment of a GAF score of 45 as unsubstantiated from a vocational aspect (Tr. 17-18) but provided no explanation for this conclusion. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [emphasis added], *citing Oslin*, 69 Fed. Appx. at 947. Thus, the ALJ should have explained *why* he found the GAF score assigned by Dr. Ball unrelated to the claimant's ability to maintain employment. In this regard, Dr. Ball noted that the claimant had significant problems with long-term memory, short-term memory and abstract thinking, and estimated that the claimant was functioning in the borderline range of intelligence (Tr. 255). Such findings could obviously impact the claimant's ability to maintain employment and may well have been the basis of the GAF score assigned by Dr. Ball, but the ALJ never discussed them. *See, e. g., Medina v. Astrue*, 2009 WL 1600557, *9 (D. Colo. June 5, 2009) ("[T]he DSM-IV itself warns against the ALJ's analysis" of rejecting a GAF score as vocationally irrelevant without explanation) [unpublished opinion], *citing* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders

(4th ed. Text Revision 2000) xxxii ("The diagnostic categories, criteria, and textual descriptions are meant to be employed by individuals with appropriate clinical training and experience in diagnosis.  It is important the DSM-IV not be applied mechanically by untrained individuals.").  Indeed, the ALJ's failure to explain why he found Dr. Ball's opinion unpersuasive amounts to substituting his own lay opinion for that of a physician, which the ALJ may not do.  *See, e. g.*, *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759-60 (10th Cir. 2005), *citing Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996).

The ALJ also overlooked probative evidence of claimant's physical impairments. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Here, the ALJ discussed only evidence that supported a finding of non-disability; he did not, for example, discuss the results of claimant's echocardiogram, which revealed that the claimant had severe pulmonary hypertension (Tr. 493).  Nor did the ALJ discuss Dr. Saeed's instructions that the claimant was to elevate her legs above her heart and wear compression stockings routinely due to her chronic venous stasis (Tr. 400).  Because the ALJ failed to discuss such evidence, the Court is unable to determine whether the ALJ even considered it, which he clearly must do.  *See, e. g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th

Cir. 1991).  *See also Haga*, 482 F.3d at 1207-08 ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

Indeed, it is fairly clear that the ALJ *did not consider* the evidence from Dr. Saeed, as he concluded that "[t]he medical evidence does not reflect that any physician advised claimant to elevate her feet" and that there was "nothing in the record to support claimant's testimony that she has to regularly elevate her legs during the day for pain relief" (Tr. 21).   In this regard, the ALJ appears to have engaged in the prohibited "picking and choosing" of medical evidence, *i. e.*, utilizing only the evidence supportive of a finding of non-disability while ignoring any evidence inconsistent therewith.  *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Because the ALJ failed to properly analyze all of the claimant's medical evidence of record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis.  If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

The Court finds that incorrect legal standards were applied by the ALJ, and that the Commissioner's decision is not supported by substantial evidence.  The decision of the Commissioner is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma